# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| CRAIG SANDERS,<br><br>    Plaintiff,<br><br>vs.<br><br>SHERIFF DON ZELLER,<br>ADMINISTRATOR MICHAEL CARR,<br>SERGEANT WILLIAMS, DEPUTY S.<br>MASON,<br><br>    Defendants. | No. C04-0067<br><br>**ORDER** |

This matter comes before the court pursuant to trial on the merits held April 11, 2006. The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court finds in favor of the defendants and directs the Clerk of Court to enter judgment accordingly.

In this case, the plaintiff contends that on April 16, 2004, he was denied his right to participate in a Muslim religious service at the Linn County Correctional Center (hereinafter "LCCC"). Following this denial, an altercation ensued between the plaintiff and jail staff. The plaintiff contends that jailers used excessive force during that altercation. The court makes the following findings of fact and conclusions of law.

## I. FINDINGS OF FACT

On April 16, 2004, Craig Sanders was an inmate in the LCCC. He had arrived at the facility on February 18, 2004, having been arrested for a federal criminal narcotics offense.

1

Inmates are booked into the LCCC upon their arrival. Among other things, the booking staff inquires as to any religious preference of the inmate. Ordinarily, inmates identifying with a particular religion are not permitted to attend services associated with any other religion. However, this prohibition is not routinely enforced. That is, shortly before any service, the service is simply announced and inmates are permitted to attend.

Inmates expressing a preference for the Islamic faith at booking are ultimately given a copy of the Koran, a prayer rug, and are invited to attend Jumaah services. The Islamic faith requires the attendance of three Muslims at the Jumaah held on Friday. An Imam, Taha Tawil, has been retained by the correctional facility to provide assistance and spiritual guidance for Muslim inmates. Linn County is the only county in Iowa with a paid Imam serving as a consultant. Imam Tawil testified at trial that the LCCC has been very receptive to his ideas and very respectful of tenets of the Islamic faith.

Shortly after the plaintiff was detained at the LCCC, he began attending Friday Jumaah prayers and was given a prayer rug and a Koran. He was also permitted to attend other Muslim spiritual study events as recorded in Defendants' Exhibit 3.

On April 16, 2004, a shift supervisor decided to check the jail records to determine that the inmates attending the Jumaah that day had expressed a preference for Islam at the time of booking. It was determined that Craig Sanders had not expressed such a preference (or his preference was inaccurately recorded). Inmates are generally not allowed to change their preference once at the jail, but this rule can be overridden by submitting a grievance to the jail administrator, Michael Carr.

On April 16, 2004, Craig Sanders was notified by Deputy Scott Mason that he would not be permitted to attend the Jumaah services due to the religious preference recorded at the time of booking. Sanders became irate. He asked to speak to Sgt. Scott Williams. Sanders was told to sit in a conference room while Sgt. Williams was summoned.

Sgt. Williams informed the plaintiff that neither he nor Deputy Mason could correct the situation that day and he would not be allowed to attend that day's Jumaah services. The plaintiff became very upset over this news and attempted to push by Sgt. Williams on his way out of the room. Williams was concerned about the plaintiff's agitated state. Williams put his hand on the plaintiff's chest to stop the plaintiff and told him to sit down.

The plaintiff was then warned that his failure to comply with orders to be seated would be met with a burst of pepper spray. After this warning, the plaintiff became compliant and sat down. Upon being informed that his Koran and prayer rug would be taken away, the plaintiff jumped out of his seat and said that the items would not be taken away. Deputy Mason got out his handcuffs and Sgt. Williams told the plaintiff that he was being taken to "24-hour cool down." Deputy Mason then told the plaintiff to turn around and put his hands behind his back. When the plaintiff refused to comply, the deputies placed their hands on his arms to turn him around. The plaintiff directed the deputies to remove their hands from him. When the plaintiff still refused to comply, he was sprayed with a two-second burst of the pepper spray. The plaintiff was then handcuffed by the officers. As they left the conference room, the plaintiff was threatening injury to the deputies upon removal of his handcuffs.

The deputies took the plaintiff to a segregated 24-hour cool down cell. On the way up, the plaintiff continued threatening the deputies. Once in the cell, the deputies told the plaintiff to lie down on the bunk so they could remove his restraints. The plaintiff refused and continued his threats that he would injure the deputies when they removed his handcuffs. As it is LCCC policy not to leave an inmate alone in a cell in restraints, and because the deputies felt they needed to protect their safety and the plaintiff's safety by not removing the handcuffs, Sgt. Williams then made the decision that the plaintiff needed to be taken to the first floor restraining board where he could be restrained and safely left alone to calm down.

3

The plaintiff was then taken to the first floor of the jail where he was strapped to a restraining board. During this time, the pepper spray was washed from his face. He remained on the board for 25 minutes before calming down. He then apologized for his earlier behavior and was released from the board. He was immediately allowed to shower.

## II. CONCLUSIONS OF LAW

### A. § 1983 Claim for Deprivation of Free Exercise Rights

The plaintiff contends that the defendants should be held liable under 42 U.S.C. § 1983 because they deprived him of his free exercise rights under the First Amendment to practice Islam.

It is unclear why the plaintiff's religious preference was recorded as "other" at booking. Possible explanations include: the claimant was uncooperative at booking, the booking officer pressed an incorrect key in attempting to enter the plaintiff's proper religion, or the booking officer simply transferred the plaintiff's religious preference from his previous booking, which was "other" at that time. Whatever the explanation, at most the LCCC made a negligent mistake at booking, which led to the plaintiff's name being left off the list of those who were allowed to attend Jumaah services. Liability for negligently inflicted harm is beneath the threshold needed to support a § 1983 claim. County of Sacramento v. Lewis, 523 U.S. 833, 848-49, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (citing Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 66, 288 L. Ed. 2d 662 (1986); Davidson v. Dannon, 474 U.S. 344, 348, 106 S. Ct. 668, 88 L. Ed. 2d 677 (1986)).

Furthermore, the most that the plaintiff showed was a negligent deprivation of one prayer service. The plaintiff's LCCC Prisoner Activity Log showed that the plaintiff was allowed to attend Muslim services on many instances prior to the incident. Defendant's Exhibit 3. The plaintiff testified that his religious preference was corrected following the incident and he was then allowed to again attend Islamic services. There is no evidence

4

of intent to deprive the plaintiff of his free exercise rights. The plaintiff has showed no reason why the defendants would suddenly be motivated to deprive him of religious liberties that he had been receiving without incident.

In addition, the plaintiff argues that he demonstrated a violation of First Amendment religious rights because inmates wanting to attend Christian services do not have to be on a list and those inmates that described their religious preference as "other" are allowed to attend Christian services. However, jail administrator Carr testified that because of the unique setting involved in the Jumaah services, precautions have to be taken to ensure that only true Muslims are allowed to attend the service. Mr. Carr explained that Muslim services, along with other religious services that included smaller numbers of inmates such as Jewish and Buddhist, are not supervised. The Christian services are supervised by an outside leader, while other smaller religious services are gatherings of inmates without supervision. This arrangement clearly creates a security risk that the LCCC tries to temper by ensuring that only true Islamic worshipers are in attendance. A prison regulation that allegedly impinges on inmates' constitutional rights, and does not affect the rights of those who are not inmates, is valid if it is reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987).

Thus, the plaintiff was not deprived on his constitutional right to free exercise of religion because the defendants are at most liable for negligence and the requirement that only those inmates who listed their religious preference as Muslim at booking are allowed to attend Muslim services is reasonably related to the legitimate penological interest of keeping the numbers of inmates at the unsupervised services low by limiting access to services to those who are truly there to worship.

### B. § 1983 Claim for Excessive Force

In any action under § 1983, "the first step is to identify the exact contours of the underlying right said to have been violated." Lewis, 523 U.S. at 842, 118 S. Ct. 1078

(citing Graham v. Connor, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). As the Eighth Circuit Court of Appeals stated in Johnson-El v. Schoemehl:

> Pretrial detainees are those individuals who the government has probable cause to believe have committed crimes. Gerstein v. Pugh, 420 U.S. 103, 114, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975). They are confined pending trial, either because there is cause to believe that they are dangerous or because they cannot afford to make bail. Unlike convicted prisoners, the state has no right to punish them. Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Their confinement conditions are analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment" standard which is used for convicted prisoners. Id.

The Court has further held that "[t]he evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard." Andrews v. Neer, 253 F.3d 1052, 1060 (2001). The Court elaborated that "[t]he injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose or those that are rationally related but are excessive in light of their purpose." Johnson-El, 878 F.2d at 1048 (citing Bell v. Wolfish, 441 U.S. 520, 538, n.20, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)).

Here, the facts support a finding that the defendants acted objectively reasonable. The altercation was initiated by the plaintiff after finding out that he was not on the list to attend Jumaah services, the plaintiff's claim that the defendants were just out to get him is not supported by any evidence. The defendants used a continuum of force. They began with a verbal command to the plaintiff to sit down, they followed with a warning about pepper spray, they attempted to handcuff the plaintiff, who was noncompliant. When these measures did not work, the defendants administered a short burst of pepper spray. As the

6

plaintiff was being handcuffed and taken up to the segregated cool down cell he was threatening the deputies. The deputies did not remove the handcuffs while the plaintiff was in the segregated cell for fear of injury to the deputies or the plaintiff himself. The deputies did not leave the plaintiff alone in the cell in handcuffs according to the LCCC policy not to leave an inmate in restraints alone in a cell. When the plaintiff did not calm down and continued to threaten the deputies, Sgt. Williams decided to place the plaintiff on the board in order to restrain him safely while giving him a chance to calm down. As he was en route to the board, the plaintiff was still threatening the deputies. The plaintiff's placement on the board was only 25 minutes in which time a nurse came in to tend to his eyes. Upon securing compliance with his behavior, the deputies immediately released the plaintiff from the board and allowed him to shower.

While the use of the board has been the subject of litigation in the Eighth Circuit Court of Appeals, and some courts have disapproved of its use, it is clear that limited use of the board is not unreasonable, as long as it is only used for the amount of time necessary to restore order. See e.g., Ogden v. Johnson, 2002 U.S. Dist. LEXIS 17684 (N.D. Iowa 2002) (noting that the restraint board should be used only as long as necessary when approving a jury determination that leaving the plaintiff on the board for five hours was unreasonable); Rogers v. Dunn, 2001 U.S. Dist. LEXIS 22710 (N.D. Iowa 2001) (noting that limited use of the restraint board would not violate an inmate's Eighth Amendment rights, but finding that leaving an inmate strapped to the board for eight hours was a violation).

This court finds that under the facts, it is clear that the defendants were not objectively unreasonable in their use of force and each increase in use of force was "incident to administrative interests in safety, security and efficiency." Johnson-El, 878 F.2d at 1048 (citing Bell v. Wolfish, 441 U.S. 520, 538, n.20, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). Thus, there is no due process violation upon which a § 1983 claim by a pre-trial detainee for excessive force can stand.

7

Upon the foregoing,

IT IS ORDERED

That the court finds for the defendants and against the plaintiff and directs the Clerk of Court to enter judgment accordingly.

April 28, 2006.

```
                                    _____
                                    JOHN A. JARVEY
                                    Magistrate Judge
                                    UNITED STATES DISTRICT COURT
```